BARRY J. PORTMAN
Federal Public Defender
JODI LINKER
Assistant Federal Public Defender
19th Floor Federal Building
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant PICARELLA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR-07-676 PJH |
| ) | |
| Plaintiff, ) | DEFENDANT'S SENTENCING |
| ) | MEMORANDUM |
| v. ) | |
| ) | Hearing Date: July 2, 2008 |
| VALERIE PICARELLA, ) | Time: 2:30 pm |
| ) | |
| Defendant. ) | |
| _____ ) | |

**INTRODUCTION**

Defendant Valerie Picarella appears before this Court to be sentenced on her conviction for False Statements or Fraud to Obtain Federal Employee's Compensation, in violation 18 U.S.C. Section 1920. After the Court considers all of the circumstances of this case pursuant to 18 U.S.C. Section 3553, Ms. Picarella respectfully requests that the Court accept the parties' joint recommended sentence of two years probation – a sentence that is sufficient but not greater than necessary to fulfill the goals of sentencing.

**BACKGROUND**

Valerie Picarella, forty-one years old, was born and raised in Baltimore, Maryland as one of four children. Presentence Report (hereinafter "PSR"), ¶ 43. She was raised in an extremely traditional and strict family, and was troubled as a young child as she observed her mother suffer

with bouts of severe untreated depression. *Id*. at ¶ 44. Despite these difficulties, she reports a relatively decent upbringing. *Id*.

Unfortunately, however, her relationship with her family has been extremely strained since she revealed her sexual orientation to them over sixteen years ago. *Id*. When she disclosed to her siblings that she is a lesbian, all three of her siblings severed all contact with her. *Id*. at ¶ 44-46. Ms. Picarella's brother, Dale, a Catholic priest, and her sister Cindy Myers, a teacher, continue to have no contact with Ms. Picarella because they are unwilling to accept her for who she is. She has also has only limited contact with her parents and is unable to discuss anything about her personal life with them. *Id*. She avoids family functions and is limited to discussing superficial and mundane topics with her parents. *Id*. Ms. Picarella's other sister Cheryl Fallon, ceased all contact with Ms. Picarella for nearly fifteen years because she was "concerned for her children because of [Ms. Picarella's sexual orientation." *Id*. at ¶ 45. Ms. Fallon recently apologized to Ms. Picarella for her behavior and the two sisters are now in regular contact. *Id*.

Being ostracized from her family at a relatively young age, Ms. Picarella picked-up and moved to California where she thought she could live openly and happily. She worked as a body builder and trainer for several years, and successfully competed in many body building competitions. In October 2002, Ms. Picarella began working as a security screener for the Transportation Security Administration (hereinafter "TSA") at San Jose International Airport. *Id*. at ¶ 7. On March 27, 2003, Ms. Picarella suffered a serious back injury that left her unable to perform her normal duties as an airport screener. *Id*. This was devastating to Ms. Picarella. Having lived much of her life as an extremely active individual who competed in body building, she was mentally and physically debilitated by this injury. She attempted numerous types of physical therapy and other traditional and alternative forms of treatment, but was unable to reduce the extreme pain that she experienced. After attempting to work in several other positions, the TSA formally put Ms. Picarella on disability in February 2004.

From February 2004 until she pled guilty to the instant offense on February 28, 2008, Ms.

DEF.'S SENTENCING MEMORANDUM;
Case No. CR 07-676 PJH                     2

Picarella was receiving disability benefits from the U.S. Department of Labor, Office of Workers' Compensation Programs. *Id*. In total, she received over $140,000 in benefits. *Id* There is no dispute that she was indeed disabled and entitled to disability benefits. However, during the four year period that she received benefits, Ms. Picarella received $7,739 in benefits to which she was not entitled. *Id*. at ¶19. Specifically, because Ms. Picarella knowingly failed to report certain income that she was receiving during this four year period, she was paid $7,729 in benefits that she would not have been paid had she accurately reported her income. For this, Ms. Picarella is extremely remorseful. *Id*. at ¶ 22-25.

## DISCUSSION

**I.     The Joint Recommended Sentence Is Sufficient But Not Greater Than Necessary To Fulfill the Sentencing Goals Under 18 U.S.C. Section 3553(a)**

Ms. Picarella respectfully requests that the Court accept the parties' joint sentencing recommendation and sentence her to two years probation, as well as require her to pay $7,739 in restitution. Such a sentence is "sufficient but not greater than necessary" to achieve the goals of 18 U.S.C. Section 3553(a).

Under the advisory sentencing guidelines, the final presentence report correctly calculates the total offense level in this case as 6, the criminal history category as I, and a corresponding sentencing range in Zone A of 0-6 months. Because the applicable guideline range is in Zone A of the Sentencing Table, "a sentence of imprisonment is not required." *See* United States Sentencing Guidelines § 5C1.1(b). Accordingly, the parties' joint recommended sentence of two years of probation fits squarely within the Guidelines.

This Court must not only consider the guideline range; rather, the Court must also consider the other directives set forth in 18 U.S.C. section 3553(a). *See United States v. Booker*, 543 U.S. 220 (2005). "The overarching statutory charge for a district court is to impose a sentence sufficient, *but not greater than necessary*" to achieve the goals of section 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- to afford adequate deterrence to criminal conduct;
- to protect the public from further crimes of the defendant; and
- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

Section 3553(a) directs sentencing courts to consider a number of additional factors, including:

- the nature and circumstances of the offense, § 3553(a)(1);
- the history and characteristics of the defendant, § 3553(a)(1);
- the kinds of sentences available, § 3553(a)(3);
- the sentencing guideline range, § 3553(a)(4);
- pertinent Sentencing Commission policy statements, § 3553(a)(5);
- the need to avoid unwarranted sentencing disparities, § 3553(a)(6);
- the need to provide restitution to any victims of the offense, § 3553(a)(7).

A sentence of two years probation accomplishes the goals of section 3553(a). Indeed, the Supreme Court in *Gall v. United States*, 128 S. Ct. 586 (2007) made abundantly clear that while a term of probation is less severe than a term of incarceration, it is nonetheless a significant punishment as it substantially restricts an individual's liberty.

> Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. *See United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3.

*Id.* at 595 -596 (internal footnotes omitted). Ms. Picarella respectfully submits that a sentence of two years of probation is warranted based on the following:

First, this is Ms. Picarella's first and only criminal offense. Significantly, at 41 years of age, Ms. Picarella has had no other arrests or convictions. She has been out on pretrial release during the pendency of this action and has been a model pretrial releasee during that entire period.

1    Second, the offense conduct in this case involved the loss of $7,739 based on Ms. Picarella's failure to report certain incomes she received over a four year period. While this amount is significant, Ms. Picarella has agreed to pay back the entire loss amount. Ms. Picarella received over $140,000 in disability benefits since February 2004, and it is only a small fraction of that amount – approximately 5 percent – that she was overpaid. Indeed, the vast majority of the funds she received were lawful payments to her for a legitimate disability that she suffered.

Third, when Ms. Picarella was initially arrested on the instant charge in the Central District of California, she was not released on bond and remained in custody for eight days. This was significant punishment for Ms. Picarella, who had never been in custody before. This term of custody should be considered additional punishment that Ms. Picarella has already suffered for her offense.

Fourth, no motions or other petitions were filed in this case. To the contrary, as soon as was practicable, Ms. Picarella admitted her wrongdoing and pled guilty to this offense. She continues to accepted responsibility for her actions and is extremely remorseful.

Finally, a felony conviction and sentence of two years probation are a serious consequence for an individual such as Ms. Picarella with absolutely no criminal history. This sentence will more than adequately punish Ms. Picarella for her particular conduct and will also adequately deter any future wrongful conduct.

In a case such as this, a paramount concern is ensuring that Ms. Picarella never re-offend. Given her lack of criminal history and her behavior on pretrial release, that is extremely unlikely. Nonetheless, having her on probation for two years will adequately address such concerns and protect the public from any possible future danger of recidivism.

In full consideration of her history and characteristics, together with the other goals of sentencing , the Court should impose the jointly recommended sentence of two years probation, and restitution in the amount of $7,739.

///

## II. The Court Should Set A Realistic Monthly Payment for Ms. Picarella's Required Restitution

As provided under the plea agreement, the Court should order Ms. Picarella to pay $7,739 in restitution. Ms. Picarella is firmly committed to repaying these funds. She respectfully requests, however, that the Court order that she pay no more than $100 per month toward this restitution to appropriately take into account Ms. Picarella's financial resources and ability to pay, as required by law. *See* 18 U.S.C. § 3663(a)(1)(B)(i) ("The court, in determining whether to order restitution under this section, shall consider . . . the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependants, and such other factors as the court deems appropriate."); *see also United States v. Ramilo*, 986 F. 2d 333, 336 (9th Cir. 1993). It is undisputed that Ms. Picarella is indigent and does not have the ability to pay a significant monthly installment. PSR ¶ 14. Specifically, Ms. Picarella does not currently have a steady income. She has been working diligently to find employment with little success to date. Unfortunately, the jobs for which she is qualified are relatively low-paying, including jobs in gyms and other fitness training professions. At this time, Ms. Picarella is unable to pay $225 per month toward her restitution as recommended by the Probation Officer, but would most likely be able to pay up to $100 per month.

## III. The Court Should Not Order the Additional Punishment of Community Service

Ms. Picarella respectfully requests that the Court not order her to perform 120 hours of community service as recommended in the PSR. As explained above, Ms. Picarella's financial situation is extremely unstable at this time and she is spending a significant amount of time looking for employment. She needs to be able to continue to focus her time and energy on securing employment and then maintaining that employment. A sentence requiring that she complete 120 hours of community service would only distract from her efforts to seek and maintain gainful employment.

///

**CONCLUSION**

For the reasons stated, Ms. Picarella respectfully requests that the Court accept the parties' joint recommended sentence of two years of probation and $7,739 in restitution – a sentence which is sufficient but not greater than necessary to meet the Court's sentencing objectives.

Dated: June 25, 2008                    Respectfully Submitted,

BARRY J. PORTMAN
Federal Public Defender

/s/
JODI LINKER
Assistant Federal Public Defender