JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

DEREK R. OWENS (CABN 230237)
Assistant United States Attorney

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California  94102
    Telephone:  (415) 436-6488
    Fax:  (415) 436-7234
    Email: Derek.Owens@usdoj.gov

Attorneys for Applicant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>        Plaintiff, )<br>)<br>    v. )<br>)<br>VALERIE MARIE PICARELLA, )<br>)<br>        Defendant. )<br>_____ ) | No. CR 07-0676 PJH<br><br>UNITED STATES' SENTENCING<br>MEMORANDUM<br><br>Hearing:     July 2, 2008<br>Time:        2:30 p.m.<br>Courtroom:  3, 17th Floor<br>             Hon. Phyllis J. Hamilton |

## I. INTRODUCTION

On February 27, 2008, defendant Valerie Marie Picarella pled guilty to one count of

making false statements and fraud to obtain federal employees' compensation, each in violation

of 18 U.S.C. § 1920.  This Court has set July 2, 2008, at 2:30 p.m. as the date for judgment and

sentencing.  The government submits the following sentencing memorandum in order to advise

the Court of the government's sentencing guideline calculations, any objections to the

presentence report ("PSR"), and its sentencing recommendation.

//

//

CR 07-0676 PJH  UNITED STATES'
SENTENCING MEMORANDUM

II. BACKGROUND

A.     Defendant's Offense Conduct[1]

1. Injury at TSA

Starting in October 2002, Valerie Picarella ("defendant") worked as a Transportation Security Officer and security screener for the Transportation Security Administration ("TSA") at San Jose International Airport. She had previously worked as a police officer, security manager, manager of a private fitness studio, and activities director for the elderly. On March 27, 2003, one of Picarella's co-workers allegedly pushed her, leaving her partially disabled for a lower back strain/injury. That day defendant was declared temporarily disabled, and subsequently received $2,780 in tax-free disability benefits every month from the U.S. Department of Labor, Office of Workers' Compensation Programs ("OWCP"). Those benefits stopped the day she pled guilty in this case. As of today, she has received over $140,000 in disability benefits from OWCP.

2. Fraudulent Submissions to OWCP

Disability benefits are supposed to be temporary. At some point, an employee is supposed to return to work or get a new job. Periodically, OWCP requires individuals receiving disability benefits to fill out and return by mail an EN-1032 form. That form requires individuals to report their employment, self-employment, and involvement in business enterprises, including relevant details such as their earnings. Once it receives this information, OWCP can reduce or eliminate the disability benefits.

On June 5 and 22, 2005, while living in Redwood City, defendant completed, signed, and returned an EN-1032 form, certifying that she had not worked or earned income in the previous fifteen months.

On June 19, 2006 and again on June 8, 2007, while living in Sparks, Nevada, defendant submitted a total of four additional fraudulent EN-1032 forms. In two of those forms, she stated that she had not worked or earned income. In another form, she said that she had done a

---

[1] The facts supporting the offense conduct are taken from paragraph 2 of the Plea Agreement and the PSR.

"nutritional consultation video" around August 2004 but had "not worked or earned any monies since." On August 9, 2007, defendant confirmed in writing that the only work she had done was the "nutritional consultation video."

### 3. Defendant's Unreported Employment Activities and Income

During the period in which defendant certified that she did not work or earn any income, she did work and earn income as an actress, as a personal fitness trainer, a model, and an escort. The total amount of income that defendant earned from these jobs, but did not report, since she began receiving disability benefits from the Department of Labor is $7,739.

### III. SENTENCING GUIDELINES CALCULATIONS

A.  Offense Level Computation and Criminal History Computation

|  |  |  |
|---|---|---|
| 1. | Base Offense Level, U.S.S.G. § 2B1.1(a)(2): | 6 |
| 2. | Specific offense characteristics, U.S.S.G. § 2B1.1(b)(1)(B) | |
| | Loss greater than $5,000, but less than $10,000: | +2 |
| 3. | Acceptance of Responsibility, U.S.S.G. § 3E1.1: | -2 |
| 4. | Adjusted offense level: | 6 |

The parties have agreed to the adjusted offense level of 6 based on the above computation. The government concurs with the computation by U.S. Probation the defendant has no criminal history points, and a Criminal History Category of I.

### IV. ARGUMENT

THE COURT SHOULD IMPOSE A SENTENCE THAT

INCLUDES PROBATION AND RESTITUTION .

The overarching statutory charge for a district court is to "impose a sentence sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a) and (a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

At sentencing, the Court must begin by determining the applicable Guidelines range. The range must be calculated correctly. *Id.* In this sense, the Guidelines are "the 'starting point

1   and the initial benchmark,'" *United States v. Kimbrough*, 128 S.Ct. 558, 574 (quoting *United*

2   *States v. Gall*, 128 S.Ct. 586, 596), and are to be kept in mind throughout the process, *Gall*, 128

3   S.Ct. at 596-97 n. 6.

4          After hearing from the parties' positions, the district court should then consider the §

5   3553(a) factors to decide if they support the sentence suggested by the parties, i.e., it should

6   consider the nature and circumstances of the offense and the history and characteristics of the

7   defendant; the need for the sentence imposed; the kinds of sentences available; the kinds of

8   sentence and the sentencing range established in the Guidelines; any pertinent policy statement

9   issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among

10  defendants with similar records who have been found guilty of similar conduct; and the need to

11  provide restitution to any victims. 18 U.S.C. § 3553(a)(1)-(7); *Gall*, 128 S.Ct. at 596-97 n. 6.

12         A.     The Defendant Has Earned A Sentence of Two Years of Probation.

13         The Guideline range for the offense conduct is 0-6 months.  The government

14  recommends a sentence of two years of probation, and restitution for the amount that the

15  defendant had earned but intentionally failed to report.

16         At sentencing a Court should look at "the history and characteristics of the defendant."

17  18 U.S.C. § 3553(a)(1).  The defendant is a former police officer who comes from a good "upper

18  middle class" upbringing.  PSR ¶44, 55.  Besides working as a police officer she has worked as a

19  physical trainer and a supervisor for TSA in San Jose, California.  As a police officer, the

20  defendant was sworn to uphold the law and protect and serve the community.  As a

21  Transportation Security Officer, she again took a position that required her to uphold the law and

22  protect the safety of airline travel.  These are positions that the general public relies on to

23  maintain the integrity of the rule of law, and these are positions that the defendant sought to

24  work in.  While swearing to uphold the laws for those jobs, she also decided to sidestep the law

25  when it came to obtaining benefits from the federal government.

26         The Court should also impose a sentence "to reflect the seriousness of the offense, to

27  promote respect for the law, and to provide just punishment for the offense."  18 U.S.C. §

28  3553(a)(2)(A).  Not only did the defendant defraud the OWCP and the Department of Labor in

1   this case, she also enlisted Frank Witko to engage in fraudulent conduct and forge a letter on

2   TSA letterhead for the defendant.  PSR ¶18.  Such conduct shows a clear disregard for the law

3   and demonstrates the defendant's willingness to use other people to perpetuate her fraud.  This

4   Court should impose a sentence that promotes respect for the law and provides just punishment.

5     B. <u>Restitution Amount</u>

6      Although the defendant collected more than $140,000 from the OWCP, the amount of

7   restitution that she is responsible for in this criminal case is $7,739, which represents the income

8   that she received from other sources during the compensation period.  The Third Circuit case,

9   *United States v. Tupone* makes it clear that in a criminal case, absent proof of medical fraud, the

10  amount of loss is the amount the defendant's benefits would have been reduced had she reported

11  the income she obtained from unreported income.  *United States v. Tupone*, 442 F.3d 145, 153-

12  54 (3rd Cir.2006) (proper loss calculation was difference between amount of benefits actually

13  obtained and amount defendant would have obtained had 1032 forms been accurate); see also,

14  U.S.S.G §2B1.1 App. Note (F)(12), which states that in a case involving government benefits

15  (e.g., grants, loans, entitlement program payments), loss shall be considered to be not less than

16  the value of the benefits obtained by unintended recipients or diverted to unintended uses, as the

17  case may be.  For example, if the defendant was the intended recipient of food stamps having a

18  value of $100 but fraudulently received food stamps having a value of $150, loss is $50.

19     In this case, the difference between the amount of benefits actually obtained and the

20  amount defendant would have obtained if she did not fraudulently fill out the forms is $7,739.

21  The parties and the U.S. Probation Officer concur that this is the appropriate amount of

22  restitution for this criminal case.

23    C. <u>Restitution Payment</u>

24     The government recommends that defendant be ordered to pay $7,739, and that sum be

25  due immediately.  18 U.S.C. § 3572(d).  If the defendant is not able to pay that sum immediately,

26  she should be ordered to make minimum monthly installments.  The government should be

27  permitted to use debt enforcement statutes to see that the judgment as soon as possible.

28  *//*

D.     <u>Special Assessment Payment</u>

The plea agreement in this case requires that the defendant pay the $100 special assessment at sentencing.  (See Plea Agreement at 5:7.)  Consequently, the government requests that the Court collect the special assessment by requiring the defendant to pay the amount due to the courtroom deputy for delivery to the Clerk of the Court.

VI. CONCLUSION

For the reasons set forth above, the government stands by the agreement of the parties and recommends a sentence of two years of probation and $7,739 restitution.

DATED: June 25, 2008                              Respectfully submitted,

                                                 JOSEPH P. RUSSONIELLO
                                                 United States Attorney

                                                 <u>/s/ Derek Owens</u>
                                                 DEREK R. OWENS
                                                 Assistant United States Attorney